UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER DIXON,<br><br>Plaintiff,<br><br>v.<br><br>SHERRI FRITTER and DIANE THEWS,<br><br>Defendants. | CAUSE NO. 3:20-CV-155-JD |

OPINION AND ORDER

Christopher Dixon, a prisoner without a lawyer, is proceeding in this case "against Sherri Fritter and Diane Thews in their individual capacities for compensatory and punitive damages for ignoring his requests for medical evaluation and treatment of his sleep apnea in October 2018 in violation of the Eighth Amendment[.]" ECF 30 at 3. The defendants filed a motion for summary judgment. ECF 165. Dixon filed a response, and the defendants filed a reply. ECF 174, 180. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

*Nurse Fritter*

Nurse Fritter submits an affidavit and Dixon's medical records, which show the following: In October 2018, Nurse Fritter was working as the Health Services Administrator at Indiana State Prison ("ISP"). ECF 167-4 at 2. On October 12, 2018, Nurse Fritter received a healthcare request from Dixon concerning his sleep apnea and his need for a CPAP machine. *Id.* at 3, 43. In order to respond to the healthcare request, Nurse Fritter reviewed Dixon's medical records, which showed: (1) he had discussed his concerns regarding fatigue and sleep apnea with Dr. Nancy Marthakis at a provider visit on June 26, 2018; (2) he had informed Dr. Marthakis he had undergone a sleep study prior to his incarceration which indicated he had sleep apnea and required a CPAP machine; and (3) Dr. Marthakis ordered that he receive an x-ray and lab work to rule out other possible causes for his fatigue before she would consider ordering another sleep study. *Id.* at 3, 34-36. After reviewing Dixon's medical records, Nurse Fritter responded to Dixon's healthcare request on October 15, 2018, by asking him to provide any details as to where outside records could be obtained regarding his prior sleep study. *Id*. at 3, 43. Nurse Fritter wanted to obtain these medical records to help determine whether it was necessary to conduct a new sleep study. *Id.* at 3-4. Neither party provides any evidence regarding whether Dixon responded to Nurse Fritter's request for details about where his outside records could be obtained. Nurse Fritter does not recall having any other interaction with Dixon in October 2018 regarding his concerns of sleep apnea. *Id.* at 3. Because Dixon does not dispute these attestations or the contents of his medical records, the court accepts them as undisputed.

3

Nurse Fritter argues she responded reasonably to Dixon's October 2018 request for treatment of his sleep apnea by asking him to provide details as to where his outside records could be obtained regarding his prior sleep study, which would have helped to facilitate his treatment. ECF 166 at 12-13. In his response, Dixon does not provide any information or argument regarding Nurse Fritter's conduct in October 2018. ECF 174. Specifically, Dixon does not dispute that Nurse Fritter responded to his October 2018 request for treatment of his sleep apnea by asking him to provide details regarding his prior sleep study. Moreover, Dixon provides no evidence indicating whether he responded to Nurse Fritter's request for information or had any other interactions with Nurse Fritter in October 2018. Thus, because it is undisputed Nurse Fritter responded to Dixon's October 2018 request for treatment of his sleep apnea by asking him to provide details to help facilitate his treatment, and the record contains no evidence of any other interaction between Dixon and Nurse Fritter, there is no evidence by which a reasonable jury could conclude Nurse Fritter was deliberately indifferent to Dixon's sleep apnea in October 2018.

In his response to the summary judgment motion, Dixon raises two arguments which must be addressed. First, he argues generally that the prison's medical staff is ineffective because they force prisoners to conduct their own examinations and are more concerned with saving money than providing effective treatment. ECF 174 at 4-7. In support of this argument, he provides surveys he conducted with various prisoners regarding whether they believe they received effective medical treatment at the prison. ECF 174-1. But Dixon's general allegations that the prison's medical staff provides

4

inadequate treatment do not show that Nurse Fritter violated his Eighth Amendment rights in October 2018 by ignoring his requests for treatment of his sleep apnea. Second, Dixon argues that he received a sleep study at the prison in February 2022, which shows the prison was capable of conducting a sleep study. ECF 174 at 7-8. But even accepting as true that the prison was capable of conducting a sleep study in October 2018, this does not show Nurse Fritter was deliberately indifferent for attempting to obtain the records of his prior sleep study which, she attests, would have helped to facilitate his treatment. Again, Dixon has provided no evidence to indicate any further involvement by Nurse Fritter.

Accordingly, because the undisputed evidence shows Nurse Fritter responded reasonably to Dixon's October 2018 request for treatment of his sleep apnea by requesting additional information to help facilitate his treatment, no reasonable jury could conclude Nurse Fritter violated Dixon's Eighth Amendment rights by "ignoring his requests for medical evaluation and treatment of his sleep apnea in October 2018[.]" *See* ECF 30 at 3. Summary judgment is warranted in favor of Nurse Fritter.

*Nurse Thews*

Nurse Thews provides an affidavit, in which she attests to the following: In October 2018, Nurse Thews worked as an Advance Practice Nurse at ISP. ECF 167-5 at 2. On October 9, 2018, she saw Dixon for a chronic care visit regarding his hyperlipidemia and hypertension. *Id.* at 3, 40-42. Nurse Thews conducted a physical examination of Dixon, took his vital signs, and reviewed the plan for treating his hyperlipidemia and hypertension. *Id.* At no point did Dixon express any concerns to

5

Nurse Thews during this visit pertaining to his sleep apnea or his belief he was in need of a CPAP machine. *Id.* at 3-4. If Dixon had raised any such concerns, Nurse Thews would have noted those concerns in Dixon's medical records. *Id.* Nurse Thews was not aware Dixon was having any concerns regarding sleep apnea or a CPAP machine in October 2018, and her examination of him did not reveal any findings that would have warranted independent consideration of sleep apnea. *Id.* at 4. Nurse Thews did not see Dixon in any other capacity throughout October 2018. *Id.*

Here, Dixon does not dispute that: (1) his only interaction with Nurse Thews in October 2018 was his October 9 chronic care appointment; and (2) he did not raise any issues during this appointment regarding sleep apnea or a CPAP machine. The court therefore accepts as undisputed that Dixon had no interactions with Nurse Thews in October 2018 regarding his sleep apnea. In his response, Dixon makes only two statements in regard to Nurse Thews. First, he states: "Dixon's chronic illnesses have been diagnosed and are ongoing in nature, 'she' just refuses to acknowledge, and was where of." Second, he states: "Ms. Thews is 'not' a doctor, nor is she knowledgeable as to matters of sleep apnea and its effects." ECF 174 at 8. To the extent Dixon argues Nurse Thews was aware of his sleep apnea, he designates no evidence in support of this contention. Regardless, even accepting as true that Nurse Thews was aware of Dixon's sleep apnea, Dixon offers no evidence that Nurse Thews knew or had reason to know he was requesting evaluation and treatment of his sleep apnea in October 2018. Thus, no reasonable jury could conclude Nurse Thews violated Dixon's Eighth Amendment rights by "ignoring his requests for medical evaluation and treatment of his sleep apnea in

6

October 2018[.]" *See* ECF 30 at 3; *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation"). Summary judgment is thus warranted in favor of Nurse Thews.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 165); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Christopher Dixon.

SO ORDERED on August 11, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT